IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DESMOND P. POWERS,
        Plaintiff,

v.                                                Civil Action No. 3:19-cv-334

ANDREW M. SAUL, Commissioner of
Social Security,
        Defendant.

## OPINION

In 2016, Desmond P. Powers filed a claim with the Social Security Administration ("SSA") for disability benefits ("DIB"). After the SSA denied his claim, Powers filed this case, challenging the SSA Commissioner's final decision. The parties have filed cross-motions for summary judgment. Powers argues that the Administrative Law Judge ("ALJ") erred in denying his claim for DIB. The Commissioner contends that the ALJ reasonably determined that Powers could perform work existing in significant numbers in the national economy. Because the ALJ applied correct legal standards and supported her findings with substantial evidence, the Court will grant the Commissioner's motion for summary judgment and will deny Powers' motion for summary judgment.

## I. BACKGROUND

Powers filed a claim for DIB on June 8, 2016, alleging disability as of April 1, 2016.[1] The SSA denied Powers' claim on initial review on September 8, 2016, and again on reconsideration on March 27, 2017. Powers requested a hearing before an ALJ, which the SSA held on November

---

[1] During the administrative review process, Powers moved to amend his alleged onset date to April 1, 2015. The ALJ, however, considered the alleged onset date of August 7, 2015, because the SSA denied Powers' prior claim on August 6, 2015.

29, 2018. On December 24, 2018, the ALJ denied Powers' claim, concluding that Powers was not disabled because he could perform work existing in significant numbers in the national economy. Powers appealed the ALJ's decision. On March 4, 2019, the SSA's Appeals Council ("the Appeals Council") denied Powers' request for review, rendering the ALJ's decision the final decision of the Commissioner.

On May 7, 2019, Powers filed this case, challenging the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). On July 8, 2019, the Commissioner filed his answer. The parties then filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II. **LEGAL STANDARD**

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the SSA's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

2

To determine whether substantial evidence exists, a court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, a court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the Commissioner's findings as to any fact, the reviewing court must affirm those findings regardless of whether that court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the reviewing court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA's regulations ("the regulations") set forth a five-step process that the agency uses to determine whether a disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite his physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform his past work

given his RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On November 29, 2018, the ALJ held a hearing during which Powers[2] and a vocational expert ("VE") testified. On December 24, 2018, the ALJ issued a written opinion, concluding that Powers did not qualify as disabled under the Social Security Act ("the Act"). (R. at 27.)

The ALJ followed the five-step evaluation process established by the regulations in analyzing Powers' claim. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ concluded that Powers had not engaged in substantial gainful activity since August 7, 2015, his alleged onset date. (R. at 20.) At step two, she concluded that Powers had the following severe impairments: degenerative disc disease, peripheral neuropathy, diabetes mellitus, and obesity. (R. at 20.) At step three, the ALJ concluded that Powers' impairments did not meet the criteria of any listing. (R. at 20-21.)

In assessing Powers' RFC, the ALJ determined that Powers could "perform sedentary work as defined in 20 C.F.R. § 404.1567(b) except he must be able to shift his weight while sitting. He must be able to elevate his feet a foot (12") off the ground for 30 minutes every two hours; he can occasionally operate foot controls; and he would miss one day of work per month." (R. at 21.)

At step four, the ALJ determined that Powers could no longer perform past relevant work. (R. at 26.) At step five, the ALJ determined that Powers could perform jobs existing in significant numbers in the national economy. (R. at 26-27.) For those reasons, the ALJ concluded that Powers did not qualify as disabled under the Act. (R. at 27.)

---

[2] Powers was represented by a non-attorney representative at the hearing.

## IV. **DISCUSSION**

Powers, thirty-one years old at the time of his alleged onset date, has past relevant work as an emergency medical technician driver, nurse technician, and unit secretary. (R. at 26.) He applied for DIB, alleging disability from the following impairments: peripheral neuropathy, diabetes, hypertension, back pain, groin abscess, abdominal pain, and cellulitis. (R. at 127.) In his appeal to this Court, Powers asserts that the ALJ erred by failing to properly explain why she gave the opinion of Dr. Andy Roussel, Powers' treating physician, partial weight. (Dk. No. 18, at 6.) The Commissioner, however, argues that the ALJ gave numerous reasons for accepting and rejecting portions of Dr. Roussel's opinion. (Dk. No. 19, at 12-13.) For the reasons set forth below, the ALJ did not err in weighing Dr. Roussel's opinion.

### *A. The Treating Physician Rule*

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment or combination of impairments that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512, 404.1527. When the record contains a number of consistent medical opinions from different sources—including opinions from the claimant's treating sources, consultative examiners, or other sources—the ALJ makes a determination based on that evidence. § 404.1527(c). When the medical opinions are inconsistent with each other or other evidence, the ALJ must evaluate and assign weight to each opinion to properly analyze the evidence involved. § 404.1527(c)(2)-(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[3] Acceptable medical sources include licensed physicians, licensed or certified psychologists, and other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527. The regulations also allow the ALJ to consider opinions from "other sources," including nurse-practitioners, physician's assistants, or therapists. SSR 06-3p; § 404.1527(f).[4] The ALJ must give a treating source's opinion controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. § 404.1527(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Further, the ALJ need not accept opinions from a treating source in every situation, such as when the source opines on whether the claimant is disabled for purposes of employment, or when the opinion is not well-supported or inconsistent with other evidence. § 404.1527(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision regarding the weight afforded a medical opinion absent an indication that the ALJ "dredged up specious inconsistencies." *Dunn*, 607 F. App'x at 267 (quotation omitted). Indeed, a reviewing court should not disturb the weight

---

[3] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the policies of SSR 06-3p into § 404.1527(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Powers filed his claim on June 8, 2016, before § 404.1527(f) took effect. (R. at 196.) The SSA does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the SSA the general power to make rules, but not granting retroactive rulemaking power). Because § 404.1527(f) does not have retroactive effect, SSR 06-3p applies to Powers' claim.

[4] SSR 06-3p provides a non-exhaustive list of examples of "other sources."

6

an ALJ assigns to a medical opinion unless the ALJ failed to give a sufficient reason for the assigned weight. *Id.*

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any treating source's specialty; and (6) any other relevant factors. § 404.1527(c). But the ALJ—not the treating source—must determine whether a claimant is disabled as that term is defined under the Act. § 404.1527(d)(1).

### *B. Application*

Dr. Roussel, a licensed podiatrist, opined that Powers

> could sit for six hours and stand and/or walk for two hours, would require a cane and/or walking shoe, would require the claimant to lie down during the day, could lift and carry at the sedentary exertional level, could occasionally change posture (except frequently turn his head), could not handle even low-stress work, would require three to four 15-minute rest periods per day, and would miss more than three days of work per month.

(R. at 24.) The ALJ gave partial weight to Dr. Roussel's opinion.[5] Notably, the ALJ largely agreed with the opinion. (R. at 24-25.) For example, the ALJ concluded that the severity of Powers' neuropathy and the associated signs found by his doctors supported Dr. Roussel's opinion regarding Powers' exertional limitations. (R. at 24.) The ALJ accepted Dr. Roussel's opinion that Powers had chronic neuropathy and would need to elevate his feet. (R. at 24-25.) Indeed, the ALJ discounted other doctors' opinions in part because their opinions were inconsistent with Dr. Roussel's opinion that Powers had greater exertional limitations. (R. at 25, 130-31, 143-44.)

---

[5] The parties do not dispute that Dr. Roussel qualifies as a treating source. *See* SSR 06-3p. Dr. Roussel began treating Powers in February, 2018, and treated Powers several times before completing his opinion. In his opinion, Dr. Roussel noted that Powers suffers from diabetic neuropathy and experiences pressure, numbness, and pain in his feet. (R. at 2304.)

7

The ALJ, however, concluded that other portions of Dr. Roussel's opinion—such as Powers' need for extra breaks, likelihood of missing work more than three days a month, limitations in changing posture and turning his head, and required use of a cane and/or walking shoe—were unsupported by the evidence.

In reaching this conclusion, the ALJ considered various sources' opinions and Powers' subjective complaints. (R. at 22-24.) The ALJ engaged in an exhaustive and comprehensive review of the record and concluded that nothing in the record supported the overly restrictive portions of Dr. Roussel's opinion. (R. at 17-27.) Indeed, the ALJ noted that Powers had unremarkable diagnostic tests and evaluations, could ambulate during appointments, and had full strength in his feet. (R. at 22-25.) The ALJ also noted that Powers had normal back examinations, full range of motion, and a normal gait. (*See, e.g.*, R. at 22-23, 768, 1174, 1230, 1237, 1417, 1605, 1608-09, 1783-85.) Further, although the ALJ acknowledged that Powers experienced pain in his back and feet, the ALJ also noted that Powers told several doctors that his medication was usually effective at relieving his pain. (R. at 22-24.) For example, in 2015, Powers reported that his pain levels improved by "100%" after physical therapy and that he had no limitations in performing daily activities. (R. at 22.) Similarly, in August, 2018, Powers told Dr. Roussel that his right foot was "only a little sore at times." (R. at 24, 2018.)

Moreover, the ALJ explained that nothing in the record supported Dr. Roussel's conclusion that Powers had limitations turning his head.[6] Indeed, Powers did not complain of neck pain or problems turning his head and had normal neck evaluations and range of motion. (*See, e.g.*, R. at 276, 311, 334, 450, 852, 1105, 1291, 2098.)

---

[6] Although Jing Britton, a nurse practitioner in Powers' primary care physician's office, concluded that Powers would have limitations in turning his head, the ALJ noted that Britton did not provide an explanation for this conclusion. (R. at 24.)

8

Similarly, the record supports the ALJ's decision to discount Dr. Roussel's conclusion regarding Powers' need for a cane or walking shoe. On one occasion, Dr. Roussel noted that Powers used a cane when he visited him for treatment. (R. at 2308.) But neither Dr. Roussel nor any other provider otherwise indicated that Powers needed a cane or walking shoe. Thus, Dr. Roussel's single observation that Powers used a cane does not establish that a cane was medically required. *See Crocker v. Colvin*, No. 1:15-cv-1215-JFA, 2016 WL 1626591, at *19 (E.D. Va. Apr. 21, 2016).

The record, therefore, establishes that the ALJ provided sufficient reasons for giving partial weight to Dr. Roussel's opinion. Indeed, the ALJ thoughtfully considered why she accepted some of Dr. Roussel's conclusions and rejected others. Further, the ALJ did not need to give Dr. Roussel's opinion controlling weight because his conclusions were inconsistent with the evidence. *See* § 404.1527(c)(3)-(4). Thus, substantial evidence supports the ALJ's decision, and the Court will not disturb the weight the ALJ accorded to Dr. Roussel's opinion. *See Dunn*, 607 F. App'x at 267.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Commissioner's motion for summary judgment and deny Powers' motion for summary judgment.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 17 August 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge